Capron and Snowden *vs.* Adams, *et al.*, Ex'rs.

*Judgment affirmed.*

(Decided 20th April, 1868 )

FRANCIS B. CAPRON and EDWARD SNOWDEN, Trading as CAPRON & CO. *vs.* JAMES C. ADAMS, JR., GEORGE R. DODGE and WILLIAM R. JOHNSON, Executors of JAMES C. ADAMS.

*Consignor and Consignee—Principal and Agent—Evidence—Right of Consignee to sell, where Advances are made upon the Consignment — How debts contracted in one Country payable in another are to be Paid.*

The plaintiffs sued on the following receipt given to them by J. C. A., the testator of the defendants:

"$409.83-100.                Received, Baltimore, February 22, 1860, of Capron & Co., four hundred and nine 83-100 dollars, which with $5.844.61, heretofore received is $6,254.44, advanced on 353 tierces of beef shipped to London, per Emelia, for sale for my account, and on receipt of acct. sales of same, I promise to refund any deficiency that may arise thereon."

The defence taken was that the deficiency arising on the sales of the beef, which deficiency was the subject of the action, was occasioned by the negligence on the part of the London consignees, H. & Co., or their

34                v. 28

Capron and Snowden *vs.* Adams, *et al.*, Ex'rs.

agents, in the management and sale of the beef, whereas the plaintiffs claimed that the beef was sold at low prices because of its inferior quality. Evidence having been offered by the plaintiffs to prove that the quality and condition of the beef when inspected in London, was not such as to command the highest market price, and that its appraised value there, rated below the invoices made in Baltimore. The defendants proved that the beef was of the best quality when packed, and that it was put up with the greatest care, and then proposed to ask their witness " what was the value of said 353 tierces shipped on the Emelia, in the Baltimore market, and at the time the invoices therefor were made out." On objection, HELD:

That the question was proper to be put, being responsive to the attack made by the plaintiffs upon the quality and condition of the beef, and tended to corroborate the invoice values which had been offered in evidence without objection.

In the case of an ordinary consignment to be sold according to specific instructions, and upon which no advances have been made or liabilities incurred, the right of the consignor to direct and control the sale could not be questioned, it being the necessary result of the relation of principal and agent.

But where the sale and management of the consignment are left entirely to the judgment and discretion of the consignees, and large advances have been made upon it, the undoubted right is conferred upon them in the absence of any agreement to the contrary, to sell in the exercise of a sound discretion, and in such mode as the usages of trade, and their general duty require.

And in such case an inquiry, whether the consignor could not have protected himself against loss, if he had been advised of the state of the London market, (which inquiry was attempted to be made by the defendants,) was irrelevant, and calculated to mislead the jury.

Whenever a debt payable in one country, is sued for in another, the plaintiff is entitled to recover a sum sufficient, as of the day of trial, to re-place the money in the country where, by the terms of the contract, it was to be paid.

But where the money was advanced and the contract made between residents of this State, the person advancing the money, however, being the agent of a foreign factor, the contract must be interpreted, and the rights and liabilities of the parties ascertained by the universal custom shown by the evidence to exist among commercial men, in the place where the contract was made, in regard to advances made by agents of foreign factors, upon consignments.

APPEAL from the Circuit Court for Howard County.

This case was before this Court at December Term, 1863, when the judgment of the Court below was reversed and the case remanded under a *procedendo.* For the nature of the plaintiffs' claim, the pleadings and the general character of the evidence, which latter was substantially the same on both trials, see the report of that case, (*Adams vs. Capron, et al.,* 21 *Md. Rep.*, 186,) and the opinion of the Court in this case.

Since the first trial James C. Adams, the defendant, died, and his executors were made parties defendants.

The present appeal is taken by the plaintiffs, from the rulings of the Court below on the second trial.

*First Exception:* The defendants having examined James C. Adams, Jr., (one of the present defendants, and the son of the original defendant,) to other matters, then proposed to ask him what was the value of the said three hundred and fifty-three tierces shipped on the Emelia, in the Baltimore market, when the said goods left Baltimore, and at the time the invoices thereof were made out; to the propounding of which question the plaintiffs objected, but the Court (SMITH, J.) overruled the objection, and allowed the question to be put to the witness, and the witness to state what was the market value of said beef in Baltimore, at the time spoken of in the question. To this ruling of the Court and to the admission of the evidence, the plaintiffs excepted.

*Second Exception:* The defendants subsequently proposed to ask the same witness the following question:

Supposing that Mr. Adams, your father, had received information from Huth & Co., of the state of the beef market in London, during the summer and autumn of 1860, the winter of 1860, 1861 and the spring of 1861, as testified to by the witnesses on the part of the plaintiffs, could he have protected himself from loss? To the putting of this question to the witness, and to his being allowed to answer the same, the plaintiffs objected, but the Court allowed the question to be

put and the witness to answer it; to this ruling of the Court, the plaintiffs excepted.

*Third Exception:* After the evidence on both sides was closed, the plaintiffs prayed the Court to insturct the jury as follows:

1. If the jury shall find from the evidence, that the plaintiffs made to the defendants' testator, James C. Adams, the advances to the amount and in the manner stated in his letters to Huth & Co., February 23d, and April 2d, 1860, and other evidence in the cause, and that the beef mentioned in said letters, was sold by said consignees, and that the account of sales given in evidence by the plaintiffs, is a true and correct account of the sales thereof, and that the same was in due time furnished to said Adams, by said plaintiffs, then the said plaintiffs are entitled to recover in this action, such portion of said advances as the said sales failed to reimburse them; provided the jury shall also find, that in the management and sales of the said consignment, the said Huth & Co., and the brokers employed by them, acted in good faith, and exercised the care, skill, attention and industry of men of ordinary prudence in their line of business.

2. If the jury shall find from the evidence the facts stated in the plaintiffs' first prayer, and shall also find the execution of the receipt dated February 22d, 1860, and shall also find the usage and custom in making reclamations to have been, as stated by the witness Berry; that then the plaintiffs are entitled to recover such an amount as will buy at the present current rate of exchange, a bill on London for the number of pounds sterling, which the jury shall find to be the difference between the £1,350 advanced, and the number of pounds sterling realized by said Huth & Co., from said sales.

3. If the jury shall find from the evidence, that the defendants' testator wrote and sent to Huth & Co., and that the latter received in due course the three several letters of said Adams, offered in evidence by the defendants, and dated respectively, February 23d, April 2d and July 19th, 1860,

and shall also find that the said Huth, under the directions thereby conferred, exercised good faith and due care in the matter of the said consignment of beef, and their best judgment in the sales thereof, and sold the said beef for as much as they could get for it at the time of sale, then they were guilty of no such negligence or misconduct as will prevent the plaintiff from recovering in this action, even though the jury may find that the said Huth & Co. did not inform the said Adams as to the condition of the London market, otherwise than by their letter of the 20th of April, 1860, and their letter of March 16th, 1860.

And the defendants then prayed the Court to instruct the jury as follows:

1. If the jury shall find from the evidence in this case, that in the months of February and March, 1860, the plaintiffs were merchants in the city of Baltimore, and correspondents of the house of F. Huth & Co., of London, and that in regard to consignments of provisions from the port of Baltimore to the said house of F. Huth & Co., in London, the plaintiffs acted at that time under the terms of agreement stated in the letter of Huth & Co. to the plaintiffs, dated " London, 3d September, 1858," a copy of which is returned as part of the evidence taken under the commission issued in this case to London, and that in said month of February, 1860, the plaintiffs induced the defendants' testator to ship to said F. Huth & Co., by the barque "Emelia," three hundred and fifty-three tierces of beef mentioned in the bill of lading in the letter of the said testator to F. Huth & Co., dated February 25th, 1860, and in the invoice contained in said letter, all offered in evidence under said commission by the plaintiffs; and that at the time of making said shipment or previously thereto, it was arranged between the plaintiffs acting under the terms of agreement stated in said letter of F. Huth & Co., of 3d September, 1858, and the defendants' testator, that an advance should be made to him on said shipment of three hundred and fifty-three tierces of beef of the proceeds of drafts on F.

Huth & Co. for certain agreed amounts, and that such proceeds of said drafts, and nothing more, were paid by the plaintiffs to the defendants' testator; and if the jury shall further find, that the said F. Huth & Co., in March, 1860, received and took charge of the said three hundred and fifty-three tierces of beef consigned to them by the said bill of lading, and that in consequence of the misconduct or negligence of said F. Huth & Co., or of brokers employed by them to sell said beef, the net amount realized from the sales of the said beef, after satisfying commissions and all other proper charges, was less than the amount of the advances made to the defendants' testator on said beef and interest thereon, and that had it not been for such misconduct or negligence, the said beef might have been sold at prices which would have fully covered said advances and interest, and all commissions and proper charges, then the plaintiffs are not entitled to recover in this case; and the said F. Huth & Co., and the said brokers so employed by them, were bound to exercise in regard to sales of said beef, the skill, care and industry of men of ordinary prudence engaged in their respective lines of business.

2. That even if the jury shall find under the instructions contained in the defendants' foregoing prayer, that the plaintiffs are entitled to recover; the jury in determining the amount of their verdict, should not include the premium of gold over United States legal tender notes, at the time of the trial of this case, as shown by the testimony of Captain Berry, taken subject to exceptions.

The Court granted the prayers of the defendants, and rejected those of the plaintiffs; to this ruling of the Court the plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

Capron and Snowden *vs.* Adams, *et al.*, Ex'rs.

*Bernard Carter*, for the appellants:

We submit that the evidence offered and objected to in the first exception was clearly inadmissible, and that it was calculated and served grossly to mislead the jury, by leading them to suppose that they might consider what this beef was worth in Baltimore, on the 13th of February, 1860, and to compare therewith what Huth & Co., got for it in London, during the summer and fall of 1860 and in 1861, and to infer from the comparison, that because the latter was less than the former, that it was so because of negligence or misconduct of Huth & Co.

Was the question propounded to the witness Adams, to which exception was made by the appellants, and which constituted the second exception, one which was proper, and the evidence proposed thereby to be given admissible? It is very clear, that under the law of this case as established in 21 *Md. Rep.*, 204, the evidence proposed to be offered could only be admissible, provided it legally tended to show that Huth & Co., were guilty of negligence or misconduct. Did it legally tend to show this? It is clear it could only so tend by showing that it was the duty of Huth & Co., to have communicated to Adams, before selling the beef, that the state of the London market during the seasons spoken of, was such as under the London commission it was shown to be; and that the neglect of this was such negligence or misconduct on the part of Huth & Co., as to prevent the plaintiffs from recovering. That Huth & Co. were under no sort of obligation to give the required information, and that Adams had no right to expect it, is settled by this Court and his own letters. 21 *Md. Rep.*, 207.

The admission of this evidence, thus inadmissible, was calculated to mislead the jury, by leading them to determine that it was misconduct and negligence in Huth & Co., in omitting, *if they did omit*, to inform Adams of the state of the London market during the summer and fall of 1860 and '61, before selling his beef at the rates they got for it; and this, although

the jury might believe from the evidence that Huth & Co. did get the very best price that the most skilful and diligent and upright men could get in *London* for the beef. The tendency of the evidence whose admission forms the subject of the first bill of exceptions, to mislead the jury, is apparent when its admission is taken in connection with the admission of that brought up by the second exception. The jury were told, by the admissions of the former, that they could consider the Baltimore prices as the standard by which to measure Huth & Co's diligence in London, and that the Baltimore invoice price, might be taken as its real value in London, and they are told, by the admission of the testimony excepted to in second bill of exceptions, that if the Baltimore prices could not be obtained in London, Huth & Co. in selling there for less, without first telling Adams that such was the case, were guilty of such conduct, as of *itself* will prevent the plaintiffs from recovering in this suit. All this is contrary to the rulings in 21 *Md. Rep.*, 186.

We consider the third prayer of the appellants before the others, because we wish to consider it in connexion with the admission of the evidence already considered. The proposition of the prayer is, that under the instructions given to Huth & Co., by Adams, in his three letters enumerated in the prayer, Huth & Co. discharged their full duty to Adams, if they exercised good faith and due care in the matter of the consignment, and their best judgment as to the best time of the sale of it, and got the most that could be got for it when they did sell; and that if they did so act, then they were not guilty of negligence or misconduct, though they wrote no letter later than their letter of the 20th of April, 1860.

This prayer of the appellants, having therefore anounced an indisputably correct proposition of law, it is very clear that its rejection by the Court, taken by itself, and especially taken in connexion with the other rulings of the Court, was fatally prejudicial to the appellants. The instruction given to the jury by the grant of the appellee's first prayer, having

(properly) declared the issue to be, whether Huth & Co. were guilty of negligence and misconduct, the appellants were entitled to have the jury instructed, that *that* conduct was *not* negligence or misconduct, which *was* not negligence or misconduct according to the judgment of this Court, and the law of the case.   *Whiteford vs. Burckmyer and Adams*, 1 *Gill*, 144; *Day and Gorsuch vs. Day*, 4 *Md. Rep.*, 269; *Atwell vs. Miller & Mayhew*, 6 *Md. Rep.*, 19; *Union Bank vs. Kerr*, 7 *Md. Rep.*, 101

It is very clear that the rejection of this prayer was calculated to injure the appellants, by inducing the jury to think that was negligence which was not, in law, or in fact, negligence.   This tendency to mislead the jury was intensified by the admission of the evidence excepted to, which had told the jury that they could consider, in determining on the question of negligence, what the Baltimore price of the beef was, as compared with the London sales, and could also consider what Adams would or could have done, if Huth & Co. had written to Adams after April 20th, 1860.

But we are not called on to show that we owe our loss of the verdict to this rejection of our third prayer; that it may have had a share in that result is sufficient.   *Long vs. Eakle*, 4 *Md. Rep.*, 458; *Hagan vs. Hendry*, 18 *Md. Rep.*, 192; *Haney vs. Marshall*, 9 *Md. Rep.*, 215.

We come now to consider the second prayer of the appellants in connexion with the second prayer of the appellees. The former declares what amount they are entitled to recover, provided the jury found for them.   The proposition of the prayer is, that inasmuch as the evidence shows that according to the agreement of the parties, and the uniform usage pertaining to the subject matter of the contract, any portion of the sum of money advanced by Huth & Co. through Capron & Co., which the sales should not realize to Huth & Co., should be made good to Huth & Co. in London, it follows that the contract on the part of Adams was, that should such deficiency exist, he would make good to Huth & Co. in Lon-

don, that portion of the pounds sterling advanced originally by Huth & Co., which they had failed to receive from the sales of the beef.

That this was the legal effect of the contract between the parties, has been expressly decided by this Court on the former appeal. This Court has there said that the measure of the liability of Adams is the same, whether the suit be brought to enforce it by Capron & Co. or by Huth & Co. The advances were made in pounds sterling, in London, and the deficiency is to be made good in the same place and in the same currency. This being the law of the case, the appellants' second prayer was designed to declare it to the jury; and to say to them that inasmuch as Capron & Co., the plaintiffs in this suit, were bound to send to London the number of pounds sterling which Huth & Co. were short, and inasmuch as the verdict must be in dollars and cents, the verdict must be for such a number of dollars and cents, as at the rate of exchange then current, would purchase a bill of exchange in Baltimore on London, for the number of pounds sterling which had to be paid in London.

The appellees' second prayer, which was granted, and to the granting of which the appellants excepted, expressly declared that the jury, in converting the pounds sterling found to be due by Adams, into dollars and cents, "should not include the premium of gold over United States legal tender notes." Since the trial of this case in the Court below, the Court of Appeals has decided the very question in issue in our case under these prayers. See case of *Marburg vs. Marburg*, decided at October Term, 1866.

*William Reynolds, Jr.,* and *Thomas Donaldson,* for the appellees:

The plaintiffs' first exception was taken to the question asked the witness, James C. Adams, Jr., "what was the value of the said three hundred and fifty-three tierces shipped on the 'Emelia,' in the Baltimore market when the goods left

Baltimore, and at the time the invoices therefor were made out?" Evidence had previously been offered by the plaintiffs to show that the quality of the beef shipped in the "Emelia" was inferior; that it was therefore worth certain low figures in the London market; and that it was impossible to sell it except at much lower figures still, and after the delay of a year and a half. To rebut this, the defendants proved that the beef, when packed, was of excellent quality, and was put up with the greatest care and skill; and the question asked the witness Adams, and objected to by the plaintiffs, was perfectly relevant to the inquiry started by the plaintiffs, regarding the quality and condition of the beef; and it had a direct bearing on the point of negligence on the part of Huth & Co., and their agents, in the management and sale of the beef.

The plaintiffs' second exception was taken to the question asked the witness, James C. Adams, Jr., "supposing that Mr. Adams, your father, had received information from Huth & Co. of the state of the beef market in London, during the summer and autumn of 1860, the winter of 1860, 1861, and the spring of 1861, as testified to by the witnesses on the part of the plaintiffs, could he have protected himself from loss?" But it is insisted on the part of the appellees, that this question was perfectly proper. It is true that Messrs. Huth & Co. had a right to sell the consignment at any time, without giving notice to Mr. Adams; but they held on to the beef for a year and a half without selling, on a constantly depreciating market, and while the beef itself was necessarily depreciating in quality by the effect of time; and when Mr. Adams, in his letter of July 19th, 1860, showed his anxiety about the consignment, and particularly requested Messrs. Huth & Co. to inform him of the state and prospects of the beef market, was it not the duty of Messrs. Huth & Co., as faithful agents, to furnish the information desired? Was not the omission to do so, negligence on their part? In *Brown & Co. vs. McGran*, 14 *Peters*, 479, it is said by the Court, "in no case will the

factor be at liberty to sell the consignment, contrary to the orders of the consignee, although he has made advances, or incurred liabilities thereon; if the consignor stands ready, and offers to re-imburse and discharge such advances and liabilities." Now, although Huth & Co. might have sold the beef on the very day after receiving Adams' letter of July 19th, 1860, yet they held on to the beef for a very long time after, all the time either neglecting to give the information which Adams had asked for, and was entitled to receive from them, or wilfully withholding it. Had the letter been answered within any reasonable time, Adams, before the dates of the actual sales, could have availed himself of the privilege allowed by the law of repaying the advances of Huth & Co., and could either have made a different disposition of the beef in London, or have brought it back to our own market, and so have protected himself from loss. The question is not as to the duty of Huth & Co. to give notice of intended sales, but as to their duty to answer the urgent written enquries of their principal. The duty of the factor to be "punctual in his correspondence," is insisted on even in the earliest treatises on the Law of Agency, and in this they are sustained by the decided cases. 1 *Livermore on Agency*, ch. 3, 68; *Russell on Factors*, 44, (48 *Law Lib.*;) 1 *Story on Contracts*, sec. 152; *Story on Agency*, secs. 189, 208; *Robins vs. Butler*, 24 *Ill.*, 387; *Clarke vs. Bank of Wheeling*, 17 *Penn. State Rep.*, (5 *Harris*,) 324; *Brown vs. Arrott*, 6 *Watts & Sergt.*, 402; *Devall vs. Burbridge*, 4 *Watts & Sergt.* 305.

The plaintiffs' third exception was to the rejection of their prayers, and to the granting of the defendants' prayers. The first prayer of the defendants is identical with that which this Court, in its opinion when this case was before it on the former appeal, declared to be "the appropriate instruction upon the evidence in the case. The right of the appellees (Capron.& Co.) is fairly presented as dependent upon the fact of the care and diligence on the part of Huth & Co., and in that view, the prayer seems to be unobjectionable." *Adams vs. Capron, et al.*, 21 *Md. Rep.*, 186.

The defendants' second prayer, which was granted, was counter to the second prayer of the plaintiffs, (rejected by the Court,) which claimed that under the usage and custom in making reclamations, proved by Captain Berry, the plaintiffs were entitled to recover such an amount as will buy, *at the present current rate of exchange,* a bill on London for the number of pounds sterling, which the jury shall find to be the difference between the £1,350 advanced, and the number of pounds sterling realized by Huth & Co., from said sales. If the other instructions given by the Court were right, a wrong instruction as to the *measure of damage,* would be no ground for reversal in this case, as the jury found a verdict for the defendants. But independently of this point, this suit was brought by Capron & Co., citizens of Maryland, in their own name; and in their declaration, it is stated that advances were made by them to James C. Adams, to the amount of $6,254.44, on the beef shipped to London; that Adams agreed with the plaintiffs that if the amount which they should realize from the sale of said beef was less than the amount of said advances, that he, Adams, would on the receipt of the account of said sales refund the amount of said deficiency to the plaintiffs; that said sales were less than said advances, and though requested by the plaintiffs to refund said deficiency, the defendant had failed to do so. And the proof first offered by the plaintiffs, as the foundation of their action, was the receipt made by Jas. C. Adams, a contract in writing, which shows that Baltimore was the place where the contract was made and where it was to be performed.

It is insisted on the part of the appellees, that no evidence of usage could be given to vary the express terms of the written contract. *Oelrichs & Lurman vs. Ford,* 21 *Md. Rep.,* 510; *Foley & Woodside vs. Mason & Son, use of Birckhead & Pearce,* 6 *Md. Rep.,* 37. That even if such evidence were admissible, the proof is not sufficient to prove that the defendants knew of and contracted with reference to the alleged

custom. That there could be no recovery by Capron & Co. beyond the deficiency in United States currency, at the date when the obligation to refund was ascertained by the delivery of the account sales to Adams, (November, 1861,) especially under the declaration in this case. Moreover the advances by whomsoever made, were made to Adams *in Baltimore,* and re-imbursement is therefore to be made *in Baltimore. Grant vs. Healy,* 3 *Sumner,* 523. That no testimony was admissible to show a premium of gold over United States legal tender notes, whether the legal tender Act be constitutional or unconstitutional.

The second prayer of the plaintiffs was based upon the jury finding " the usage and custom in making reclamations to have been *as stated by the witness Berry,* and yet prayed an instruction that the plaintiffs were entitled to recover such an amount as will buy at the *present* current rate of exchange a bill on London, &c." But Berry says in his testimony in regard to the alleged custom that the re-payment in case of deficiency is to be made " at current rates of exchange, *on the day I present the account sales sent from abroad, and demand the deficiency; the amount he has to pay me is fixed as of that day.*" And on re-examination he reiterates this, and says *that he knew nothing of any usage in regard to such cases after presentation of the account sales, and a refusal to pay on the part of the shipper.*

The plaintiffs' third prayer either attempted to take away from the jury the question of negligence and misconduct on the part of Messrs. Huth & Co., the consignees of the beef, which it was strictly within their province to decide; or it was calculated by its terms to mislead the jury in regard to that question. It was also erroneous, because in effect it instructed the jury that there could be neither bad faith nor negligence on the part of Huth & Co., as consignees, in their refusing or omitting to give the shipper, Adams, the information which was urgently requested by Adams in his letter to Huth & Co., of July 19th, 1860, in regard to the state and

prospects of the beef market in London, which letter was written fifteen months or more before the greater part of the beef was sold in London.

ROBINSON, J., delivered the opinion of this Court.

In February, 1860, the appellees' testator, James C. Adams, at the instance of the appellants, agents of Messrs. Huth & Co., of London, shipped to the latter, three hundred and fifty-three tierces of beef. Upon this consignment, advances were made to the amount of $6,254.44, being the proceeds of several bills of exchange drawn by the appellants on Huth & Co., as appears by the following receipt:

"Received, Baltimore, 22d February, 1860, of Capron & Co., four hundred and nine $\frac{80}{100}$ dollars, which with $5.844$\frac{61}{100}$ heretofore received, is $6,254$\frac{44}{100}$, advanced on 353 tierces of beef, shipped to London, per 'Emelia,' for sale on my account, and, on receipt of account of sales of same, I promise to refund any deficiency that may arise therefrom.

"JAMES C. ADAMS."

The advances being largely in excess of the sales, this suit was brought to recover the deficiency. The declaration contains the usual money counts, and also a special count alleging an agreement on the part of the defendant, to refund to the plaintiffs any deficiency that might arise between the proceeds of sale and the advances made. In the former appeal in this cause, 21 *Md. Rep.*, 186, it was held that the plaintiffs right to recover was qualified by the care and diligence with which Huth & Co. discharged their duties as consignees. Whether they were guilty of negligence, or misconduct in the sale of the beef, was the question in issue between the parties. Evidence was offered on the part of the appellants, to prove that the quality and condition of the beef when inspected in London, was not such as to command the highest market price, and that its appraised value there rated below the in-

voices made in Baltimore. On the other hand, the appellee proved that the beef was of the best quality when packed, and that it was put up with the greatest care. We think it was competent for the defendant to follow up this proof, by showing the value of the beef in the Baltimore market at the time it was shipped. It was responsive to the attack made by the plaintiffs upon the quality and condition of the beef, and tended to corroborate the invoice values which had been offered in evidence without objection. The first objection therefore is not sustained. We do not however concur with the ruling of the Court in the second bill of exceptions. This is not the case of an ordinary consignment to be sold according to specific instructions, and upon which no advances have been made or liabilities incurred. In such a case, the right of the consignor to direct and control the sale could not be questioned, being the necessary result of the relation of principal and agent. But here, the consignment was made without restrictions, and the sale and management of the beef was left entirely to the judgment and discretion of Huth & Co. "*Do with it just as it were your own,*" is the instruction of Adams to the consignees, in his letter of February 23d, and when informed of the depressed condition of the London market, in his letter of July 19th, he says: "I am sure that you will effect sales to the best advantage." Moreover, large advances had been made upon the shipment, thereby conferring upon Messrs. Huth & Co., in the absence of any agreement to the contrary, the undoubted right to sell, in the exercise of a sound discretion, and in such mode as the usages of trade and their general duty require. *Brown & Co. vs. McGran,* 14 *Peters,* 479. It was in view of these relative rights and duties of the parties, that this Court in the former appeal, decided that Huth & Co. were under no obligation to notify Adams of the depreciated value of the beef before making sale, nor was it their duty to inform the appellee of the condition of the London market and the inquiry of the witness as to whether Adams could not have protected himself

against loss, if he had been advised of the state of the London market was irrelevant and calculated to mislead the jury. Admitting the right of the appellee to have controlled the mode and manner of sale, upon re-imbursing Huth & Co. for the advances made by them, it no where appears, that the appellee ever offered to reimburse them, or gave any specific orders in regard to the disposition of the consignment. On the contrary, all the evidence shows that the sale was intrusted solely to the good faith and judgment of the consignees.

For these reasons, we are also of the opinion, that the plaintiffs' third prayer should have been granted. The right of the plaintiffs to recover was expressly qualified by the good faith and due care on the part of Huth & Co., in the sale of the beef, and accords with the opinion of this Court, expressed in the former appeal. The plaintiffs' second prayer was properly rejected. It is true, that whenever a debt, payable in one country, is sued for in another, the plaintiff is entitled to recover a sum sufficient, as of the day of trial, to replace the money in the country where, by the terms of the contract, it was to be paid. This Court so decided in *Marburg vs. Marburg*, October Term, 1866, where, by express agreement, the money was to be paid in florins, at Frankfort on the Maine. But there is no such agreement in this case. On the contrary, the money was advanced, and the contract made between residents of this State. The beef was shipped at the instance of the appellants, the receipt to cover any deficiency that might arise taken by them, and it does not appear, up to the time of the consignment, that Adams ever knew or had any communication with Huth & Co. Apart from the evidence in regard to usage, this case would come directly within the ruling of *Grant, et al. vs. Healy*, in which it was held, that the balance due on advances made in Boston, by the agent of a foreign factor, was payable in Massachusetts, and that the plaintiff was entitled to recover the deficiency only at the par of exchange. In this case, however, the contract must be interpreted, and the rights and liabilities of the parties ascertained

by the universal custom, which the evidence proves to exist among commercial men in Baltimore, in regard to advances, made by agents of foreign factors upon consignments. In all such cases, it appears that if the proceeds of sale are insufficient to cover the advances, it is the duty of the consignor to place in the hands of the agent, funds sufficient to re-imburse the factor, at the current rate of exchange, at the time when the account of sales showing the deficiency is presented. The liability of the consignor is fixed as of that day. The plaintiffs, therefore, in this case, were only entitled to recover a sum sufficient to re-imburse Huth & Co., as of the day when the account of sales was presented, with interest on said sum, if payment was delayed. The liability of Capron & Co. to Huth & Co., was fixed upon the rendition of the account of sales, and it was their duty to have discharged it. If paid by them at that time, they could not demand of Adams any greater sum;—because they did not pay it, can furnish no reason why the liability of the defendant should be increased. The liability of the defendant, therefore, being fixed as of the day when the account of sales was rendered, and it being admitted that there was no premium on gold over United States legal tender notes at that time, we deem it unnecessary to decide the question raised by the defendants' second prayer. The judgment in this case must be reversed and a *procedendo* awarded.

> *Judgment reversed and*
> *procedendo awarded.*

(Decided 21st April, 1868.)